UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY MCKAUGHAN, ) | Case No.: 1:19-cv-0849 JLT |
| ) | |
| Plaintiff, ) | ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF, TAMMY MCKAUGHAN |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Tammy McKaughan asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in by not applying the "medical improvement" standard and instead using the five-step sequential process. In addition, Plaintiff asserts the ALJ erred in reviewing the record related to her mental impairments and rejecting the opinion of a consultative examiner. (Doc. 15) For the reasons set forth below, the administrative decision is **AFFIRMED**.

**BACKGROUND**

In 2006, Plaintiff received a "full favorable decision," finding she was disabled and entitled to supplemental security income. (Doc. 10-3 at 16; *see also* Doc. 10-4 at 2-11) After the death of her husband, Plaintiff began receiving survivor benefits and her disability benefits were terminated due to excess income in 2013. (*See id.*; *see also* Doc. 10-4 at 15)

On March 22, 2016, Plaintiff filed a new application for supplemental security income, alleging

disability beginning January 2, 2002. (Doc. 10-4 at 13) The Social Security Administration denied the application at the initial level and upon reconsideration. (*Id.* at 25-37) Plaintiff requested an administrative hearing on the application and testified before an ALJ on January 9, 2018. (*See* Doc. 10-3 at 17, 41) The ALJ determined Plaintiff was not disabled and issued an order denying benefits on June 11, 2018. (*Id.* at 17-34) Plaintiff requested review of the decision with the Appeals Council, which denied the request on April 25, 2019. (*Id.* at 2-7) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the application date of March 22, 2016. (Doc. 10-3 at 18) Next, the ALJ found Plaintiff's severe impairments included: "morbid obesity; poorly controlled diabetes; obstructive sleep apnea; depression; and anxiety." (*Id.* at 19) The ALJ found Plaintiff also had "impairments that are nonsevere," including: rheumatoid arthritis; soft tissue swelling; right knee bursitis; degenerative changes in the lumbar spine; neuropathy; "back, musculoskeletal, and inflammatory arthritis;" uterine fibroids; ovarian cyst; and digestive problems. (*Id.* at 19-21)

At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 10-3 at 21-24) The ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). Except, the claimant is limited to occasional climbing of ramps and stairs; she cannot climb ropes, ladders, or scaffolds. She is limited to occasional stooping, kneeling, crouching, and crawling. The claimant must be protected from workplace hazards such as unprotected heights and dangerous moving mechanical parts. She is limited to occasional interaction with supervisors and to brief and superficial interaction with coworkers and the public. She is limited to a low-stress work environment, defined as limited to simple workplace decisions and a structured work environment with little change to the workplace setting and routine. The claimant is anticipated to have one unscheduled absence once per month.

(Doc. 10-3 at 24) Plaintiff did not have past relevant work to be evaluated at step four. (*Id.* at 32) However, with the identified residual functional capacity, the ALJ determined at step five that "jobs that exist in significant numbers in the national economy that the claimant can perform," such as small product assembler, production assembler, and maid/cleaner housekeeping. (*Id.* at 32-33) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 34)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues that "the ALJ committed reversible error in failing to properly apply the 'medical improvement' standard" in reviewing her application for benefits, due to her prior receipt of benefits. (Doc. 15 at 8, emphasis added) In addition, Plaintiff asserts the ALJ erred in evaluating her psychiatric residual functional capacity, by rejecting limitations identified by a consultative examiner. (*Id.* at 10-15)

**A.   Governing Standards**

When a claimant receives SSI, the Commissioner conducts periodic reviews to determine whether that individual continues to meet the requirements. *See* 20 C.F.R. § 416.990. In conducting continuing disability reviews for SSI benefits, a seven-step sequential evaluation process to determine whether there has been medical improvement in the individual's impairments that is related to ability to do work. 20 C.F.R. § 416.994. This process is often referred to as the "medical improvement" standard.

The parties disagree regarding whether the "medical improvement" standard was applicable to Plaintiff's application for benefits. Plaintiff contends the ALJ was required to determine whether she had a "medical improvement" to not be entitled to benefits, in light of her prior receipt of SSI benefits. (Doc. 15 at 7-8) The Commissioner argues the "medical improvement standard applies only to [continuing disability reviews], and as such applies only to the issue of whether a current recipient of Title XVI SSI (or beneficiary of Title II Disability Insurance Benefits) is still disabled." (Doc. 16 at 8-9) Instead, the Commissioner asserts the five-step sequential evaluation for new applications was properly applied by the ALJ. (*Id.* at 9)

The Regulations provide that the payment of SSI benefits may be suspended or terminated in certain circumstances. 20 C.F.R. §§ 416.1320-40. For example, a claimant's benefits may be

suspended for non-medical reasons, including failing to comply with requests for information by the Administration, excess income, incarceration, excess resources. *See id*. Once benefits have been suspended "for any reason" for twelve continuous months, a claimant's benefits will be terminated. 20 C.F.R. §, § 416.1335.

Plaintiff's benefits were "terminated in 2013 for non-medical reasons," as Plaintiff had excess income after receiving survivor's benefits in 2012. (Doc. 10-4 at 15; *see also* Doc. 10-3 at 16) Because Plaintiff's benefits were terminated, they could not simply be resumed. *See* 20 C.F.R. §416.1335; *see also Brennan v. Astrue*, 501 F.Supp.2d 1301, 1309 (D. Kan. 2007) ("Plaintiff's benefits were terminated when they had been suspended for twelve consecutive months…. [H]er benefits could not be resumed because they had been terminated."). Thus, Plaintiff was required to file a new application for benefits, which was the application before the ALJ.

The ALJ was presented with a new application for benefits and was not evaluating Plaintiff's prior receipt of benefits. Thus, the five-step sequential evaluation applied to Plaintiff's claim, rather than the "medical improvement" standard applied to continuing disability reviews. *See Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990) (rejecting the claimant's argument that his new applications "should have been treated as a reopening of his termination of benefits" and explaining the medical improvement standard only applies when the Commissioner is considering termination of benefits, "not in later applications for benefits"); *see also Harrell v. Bowen*, 862 F.2d 471, 477 (5th Cir. 1988) ("finding medical improvement … does not apply to new applications for disability benefits"); *Brennan*, 501 F.Supp.2d at 1309 ("Because this case involved a new application rather than a continuing disability review, the ALJ applied the five-step sequential evaluation process provided in 20 C.F.R. § 416.920 rather than the seven-step medical improvement standard provided in 20 C.F.R. § 416.994 for continuing disability reviews"). Thus, the ALJ was not required to determine whether Plaintiff had a medical improvement since her prior receipt of benefits and did not err in applying the five-step sequential evaluation to evaluate Plaintiff's new application for SSI.

**B.     Narrative Discussion Requirement of SSR 96-8p**

Plaintiff observes that Social Security Ruling 96-8p requires an ALJ "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g.,

5

1 laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." (Doc. 15 at 10) According to Plaintiff, "While ALJ Maccione summarized the medical evidence in this case, her psychiatric RFC assessment for Plaintiff's benefits was conclusory and did not contain any rationale or reference to the supporting evidence, as required by Social Security Ruling (SSR) 96-8p." (*Id.*)

Social Security Rulings are issued by the Commissioner to clarify regulations and policies. Though they do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989). The purpose of SSR 96-8p was to provide "the Social Security Administration's policies and policy interpretations regarding the assessment of [a] residual functional capacity (RFC) in initial claims for disability benefits..." SSR 96-8p, 1996 SSR LEXIS 5 at *1. Social Security Ruling 96-8p identifies the evidence that the ALJ must consider, including a claimant's medical history, signs and objective findings, treatment, daily activities, evidence from lay witnesses, observations, medical opinions, effect of symptoms, any attempts to work, and other evidence in the record. *Id.* at *12-14. It also instructs that the ALJ include a "narrative discussion," including "a thorough discussion and analysis of the objective medical and other evidence" and an explanation of the effects of symptoms reported "on the individual's ability to work." *Id.* at *19-20.

Plaintiff has not identified any specific provision of these standards set forth in SSR 96-8p that she believes the ALJ has not satisfied. The Court's review of the ALJ's decision indicates she provided a thorough summary of the medical record and non-medical evidence, including Plaintiff's testimony at the hearing and lay witness statement. (*See* Doc. 10-3 at 24-32) The ALJ identified the weight given to each medical opinion in the record. (*See id.* at 29-31) Thus, Plaintiff fails to show any error by the ALJ for failing to comply with the narrative discussion requirements identified by SSR 96-8p.

**C.     Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight, but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes*

*v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

An opinion is not binding upon the ALJ and may be discounted whether another physician contradicts it. *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical physician only by identifying a "clear and convincing" reason.  *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830.  When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff asserts the ALJ erred by declining "to assign substantial weight" to the opinion of Dr. Alberto Lopez, who performed a consultative examination.  (Doc. 15 at 16-22) Because the opinions of Dr. Lopez were contradicted by the state agency medical consultants—Drs. Schwartz and Murillo (*see* Doc. 10-3 at 30) —the ALJ was required to identify specific and legitimate reasons for rejecting the examining physician's opinions.  *See Lester*, 81 F.3d at 831.

1.     Opinions of Dr. Lopez

On November 16, 2017, Dr. Lopez performed an "independent medical evaluation" upon the request of Plaintiff's counsel.  (Doc. 10-14 at 3) Dr. Lopez noted that he spent one hour "in direct, face to face contact" with Plaintiff and two hours reviewing a medical file that was provided.  (*Id.*)  Plaintiff reported having an abusive childhood and attempted suicide at the age 17.  (*Id.*)  Dr. Lopez indicated Plaintiff was "used to being alone," had "a tendency to stay at home," and avoided crowds. (*Id.* at 4-5) She reported "significant pain" during the examination, which she described as an eight out of ten in her right shoulder and low back.  (*Id.* at 7) Dr. Lopez opined Plaintiff was "open and cooperative," though her demeanor was dysphoric and she "appear[ed] constricted and depressed."  (*Id.*) He found

Plaintiff was able to "recall one-half out of three objects after five minutes, on short-term memory testing" and her "[d]igit span [was] intact at six." (*Id.*)

Dr. Lopez administered the Minnesota Multiphasic Inventory-2 ("MMPI-2) test, which he explained was "a psychological inventory designed to assess a number for the major patterns of personality and emotional disturbances." (Doc. 10-14 at 8)  Dr. Lopez opined Plaintiff cooperated with the process, and "endorsed items suggesting she is experiencing a low morale and a depressed mood." (*Id.*)  He found Plaintiff was "emotionally immature," "dependent and demanding," and "irritable when her demands [were] frustrated." (*Id.*)  He believed Plaintiff was "somewhat shy with social concerns and inhibitions" and "hypersensitive about what others may think of her." (*Id.*) Dr. Lopez believed the results "suggested longstanding personality disorder, with elements of anxiety and depression." (*Id.*)

According to Dr. Lopez, Plaintiff was "not able to compete on the open labor market." (Doc. 10-14 at 12)  Dr. Lopez opined Plaintiff would "have difficulties remembering locations given her concentration impairment" and would "not be able to maintain touch-and-go concentration for an extended period of time because of her severe fatigue." (*Id.*) He noted that Plaintiff "does not leave her home" on some days and opined she would "have difficulties maintaining a regular work schedule, and would not be reliable to go to work." (*Id.* at 13)  Dr. Lopez indicated Plaintiff would "not be able to sustain a work pace without special supervision" given her "episodes of severe depression and panic." (*Id.*)  Dr. Lopez also believed Plaintiff was "unable to complete a normal workday without interruptions from her work routine with severe anxiety, fears, and also panic." (*Id.*)  He opined "[s]ocial interaction would be problematic," and Plaintiff would 'not be able to interact appropriately" with her supervisors and the public. (*Id.*)

Dr. Lopez completed a mental residual functional capacity statement, form, and "medical opinion re: ability to do work-related activities." (Doc. 10-14 at 16-22) Dr. Lopez indicated Plaintiff was precluded "not precluded" from performance of the following activities: carrying out very short and simple instructions, asking simple questions, and requesting assistance. (*Id.* at 16-18, 20-21)  Dr. Lopez believed Plaintiff's impairments precluded her from the following activities for "5% or more of an 8-hour work day": understand, remember, and carry out very short and simple instructions; remember locations and work-like procedures; make simple work-related decisions; interact

appropriately with the public; and respond appropriately to changes at work.  (*Id.*)  Further, Dr. Lopez indicated Plaintiff was precluded from performance of the following activities for "10% of an 8-hour work day": maintain attention and concentration, perform activities within a schedule, maintain regular attendance, sustain a routine without special supervision, work in coordination with or close proximate to others without being distracted, maintain socially appropriate behavior, accept instructions, be aware of hazards, travel to unfamiliar places, and set realistic goals or make plans.  (*Id.*)

Dr. Lopez believed Plaintiff was precluded from activities of daily living and had difficulties with social functioning for about 10% of an eight-hour day.  (Doc. 10-14 at 22)  In addition, Dr. Lopez concluded Plaintiff was likely to suffer four episodes of decompensation within a twelve-month period, each of at least two weeks in duration.  (*Id.* at 22)

2. ALJ's evaluation of the opinion

After summarizing the medical record, the ALJ indicated she gave "very little weight[] to the findings and opinions of Dr. Lopez."  (Doc. 10-3 at 30)  The ALJ explained her reasoning as follows:

> [T]hese findings are not consistent with the objective medical evidence. Dr. Lopez[] is not a treating source, and does not have a treatment history with the claimant, but was a consultant hired by the claimant's representative to perform a one-time assessment. As noted above, Dr. Lopez found personality disorder and anger management (she may act aggressively if frustrated) problems that are not anywhere in the medical record and then finds severe limitations based on these unsupported conditions. The degree of limitations that Dr. Lopez suggests are not consistent with the mental health records in the file, which show that claimant presented with normal mood and affect and no noted problems with temper control or aggressiveness (Ex. B8F/74, B8F/94, B8F/102, B8F/118, B8F/157, B8F/166, B8F/182, B8F/224, and B8F/248). The claimant takes medication, which was being titrated as of summer 2017, and admitted that she had not been going to psychotherapy and does not have major mental health complaints in her treatment records (Ex. B3F/3).
>
> The undersigned gives no weight to Dr. Lopez' statement that the claimant could not compete on the open labor market as issues of disability are reserved to the Commissioner. Furthermore, there was no basis provided for having difficulties remembering locations or a memory impairment, the record documented intact memory (Ex. B8F/94, B8F/102, B8F/157, B8F/166, B8F/182, B8F/224, and B8F/248). Dr. Lopez gives an extensive mental health, family, and job history, as provided by the claimant in the very same report, which demonstrates intact memory (Ex. B5F). He reported that there was a possibility she contemplated suicide, but this occurred between 2005 and 2008, 8 years prior to the application date (Ex. B2F/7). She has consistently reported no suicidal ideation after the application date (Ex. B2F/5-6, B3F, B3F/12-13, B3F/16, B3F/24, B3F/27, and B5F/5).  Dr. Lopez attributes limitations in concentration to fatigue, but this was based on the claimant's subjective complaint, there was no indication[] of distractibility or concentration issues in mental status examination and indicated that she could remember a digit span of 6 (Ex. B5F/5). Furthermore, the claimant's medical records attribute her fatigue at the time to her

> sleep apnea, and Dr. Lopez examined her at a time when she was not receiving treatment in the form of oxygen through a CPAP machine at night.
>
> Finally as indicated above, there are serious concerns in the reliability validity and consistency of the MMPI evaluation that is the basis for Dr. Lopez's opinion. Dr. Lopez attributes to it far more certainty than the test itself and its methodology support. When asked for the underlying test results for this opinion, the claimant produced the results of one administration of the MMPI-2, whereas Dr. Lopez' report states there were two administrations. Dr. Lopez only cites the results on one administration, and from these results suggests that claimant responds to questions similarly as people who have a personality disorder, have vague physical complaints and have anger management problems. These findings are inconsistent with the objective medical evidence, the claimant's demeanor and history. She lives independently, drives, shops in stores, attends her children's functions, and does not have a legal history (Ex. B2F/3). There is no evidence that she required crisis intervention, inpatient psychiatric hospitalization, or other intensive mental health treatment consistent, with Dr. Lopez's statement that there have been four episodes of decompensation. Moreover, as explained above, the MMPI-2 is primarily a secondary diagnostic tool to assist therapists in ascertaining avenues to approach treatment. Its use as a primary diagnostic tool has been questioned and is the subject of recent study, e.g. Assessment of DSM-5 Section II Personality Disorders with the MMPI-2-RF in a Nonclinical Sample, *Journal of Personality Assessment*, 2017 Jul-Aug 99(4):384-387.

(Doc. 10-3 at 30-31)

3.   Analysis

Although Plaintiff contends the ALJ should have adopted the findings of Dr. Lopez, Plaintiff does not address the factors considered by the ALJ, or the finding that her test results were not valid. (*See* Doc. 15 at 10-15) Plaintiff merely provides a summary of the findings of Dr. Lopez and treatment notes that were identified as reviewed by Dr. Lopez. (*Id.* at 10-14) The Court is unable to speculate as to what errors Plaintiff believes the ALJ committed when evaluating the opinion. *See Valentine v. Astrue,* 574 F.3d 685, 692 n.2 (9th Cir. 2009); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (noting the Court "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant'"). The Court notes that the ALJ considered a number of factors to evaluate the opinions from Dr. Lopez, including inconsistencies with the objective medical record, inconsistencies with his own report, the treatment Plaintiff received, and Plaintiff's level of activity.

   a.   *Inconsistencies with the record*

An ALJ may reject medical opinions that are inconsistent with the overall record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999); *see also Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2003 (an ALJ may reject an opinion when it is

10

"unsupported by the record as a whole"). However, to reject an opinion as inconsistent with the physician's notes or medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). To reject an opinion as contradicted by the medical record, the ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey*, 849 F.2d at 421-22.

The ALJ identified many inconsistencies with the opinion of Dr. Lopez and the objective medical record. First, the ALJ observed that the "personality disorder and anger management" issues identified by Dr. Lopez were "not anywhere in the record." (Doc. 10-3 at 31) The ALJ noted while questioning the validity of the MMPI-2 results, that Plaintiff "was in treatment for over seven years, and no personality disorder was diagnosed or treated." (*Id.* at 28-29) To the contrary, the ALJ found the treatment notes established that Plaintiff "presented with normal mood and effect and no noted problems with temper control or aggressiveness." (*Id.* at 30, citing Ex. B8F/74, B8F/94, B8F/102, B8F/118, B8F/157, B8F/166, B8F/182, B8F/224, and B8F/248 [Doc. 10-15 at 75; Doc. 10-16 at 7, 15, 31, 70, 79; Doc. 10-17 at 6, 48, 72) In addition, the ALJ found Dr. Lopez' opinion that Plaintiff would suffer from episodes of decompensation conflicted with the record, because there was "no evidence that she required crisis intervention, inpatient psychiatric hospitalization, or other intensive mental health treatment." (Doc. 10-3 at 31)

Significantly, Plaintiff does not dispute the determination that the treatment notes do not indicate any diagnosis of personality disorder or anger management issues. (*See generally* Doc. 15 at 10-15) Similarly, Plaintiff does not identify any evidence of decompensation that would undermine the ALJ's findings. Because the ALJ carried her burden to identify specific inconsistencies between the record and the findings of Dr. Lopez, the Court finds the inconsistencies support the ALJ's decision to give less weight to the opinion. *See Morgan*, 169 F.3d at 602-03; *see also Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("it is appropriate for an ALJ to consider the absence of

supporting findings… in rejecting a physician's opinion").

### b. *Inconsistencies within the report of Dr. Lopez*

Internal inconsistencies within a report support the decision to discount the opinion of a physician. *See Morgan*, 169 F.3d at 603; *see also Khounesavatdy,* 549 F. Supp. 2d at 1229 (an ALJ may consider "the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion").

The ALJ found the findings of Dr. Lopez regarding Plaintiff's memory were inconsistent with his own observations during the examination. (Doc. 10-3 at 31) For example, the ALJ noted Plaintiff "remember[ed] a digit span of 6" during the examination. (*Id.*) The ALJ observed that Dr. Lopez gave "an extensive mental health, family, and job history, as provided by the claimant," yet opined Plaintiff had "difficulties remembering location or a memory impairment." (*Id.*) However, the ALJ found the history provided by Plaintiff "demonstrate[d] intact memory." (*Id.*) Because the ALJ identified inconsistencies within the report of Dr. Lopez and his own conclusions, the inconsistencies support the decision to give less weight to the medical opinion.

### c. *Level of activity*

An ALJ may reject an opinion when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue,* 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a medical opinion where the assessment was based upon the claimant's subjective complaints, and limitations identified by the doctor conflicted with the claimant's daily activities).

The ALJ observed that Plaintiff "lives independently, drives, shops in stores, [and] attends her children's functions, and does not have a legal history." (Doc. 10-3 at 31) Because Plaintiff's reported level of activity exceeded the limitations assessed by Dr. Lopez—who believed Plaintiff would have difficulty leaving her home to go to work—this was a specific and legitimate reason to give less weight to his opinions.

### d. *Validity of the test results*

Plaintiff does not challenge—or even address—the ALJ's determination that the results of the

MMPI-2 administered by Dr. Lopez were unreliable and not valid. Thus, Plaintiff waived any challenge to the ALJ's determination regarding the validity of the test results, and the rejection of Dr. Lopez' opinion on this basis. *See Zango v. Kaspersky Lab, Inc*., 568 F.3d 1169, 1177 n. 8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived")*; see also Pendley v. Colvin,* 2016 U.S. Dist. LEXIS 53470 at *22-23 (D. Or. Mar. 2, 2016) (noting that where the plaintiff "challenge[d] some, but not all, of the reasons provided by the ALJ" and "any argument against those- non challenged reasons [was] deemed waived").

      e.  *Opinion on the ultimate issue*

The ALJ indicated she gave "no weight to Dr. Lopez' statement that the claimant could not compete on the open labor market" because "issues of disability are reserved to the Commissioner." (Doc. 10-3 at 31) Statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions" under the Regulations. 20 C.F.R. §§ 404.1527(e), 416.927(e). Rather, an ALJ "is precluded from giving any special significance to the source" when it is on an issue reserved to the Commissioner, such as the ultimate issue of disability. SSR 96-5p, 1996 WL 374183 at *3 (July 2, 1996); *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[t]he law reserves the disability determination to the Commissioner"); *Martinez v. Astrue*, 261 Fed. App'x 33, 35 (9th Cir. 2007) ("the opinion that [a claimant] is unable to work is not a medical opinion, but is an opinion about an issue reserved to the Commissioner. It is therefore not accorded the weight of a medical opinion."). Because Dr. Lopez' statement rests on the ultimate issue of disability, the ALJ did not err in rejecting the conclusion.

    4.  Substantial evidence supports the determination

When an ALJ rejects a medical opinion, the ALJ must not only identify a specific and legitimate reason for rejecting the opinion, but the decision must also be "supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. Accordingly, because the ALJ articulated specific and legitimate reasons for rejecting the opinions of Dr. Lopez, the decision must be supported by substantial evidence in the record.

Previously, this Court explained: "The role of this Court is not to second guess the ALJ and reevaluate the evidence, but rather it must determine whether the decision is supported by substantial

evidence and free of legal error." *Gallardo v. Astrue*, 2008 WL 4183985 at *11 (E.D. Cal. Sept. 10, 2008); *see also German v. Comm'r of Soc. Sec.*, 2011 WL 924737 at *3 (E.D. Cal. Mar. 14, 2011) (explaining "[i]t is not for this court to reevaluate the evidence"). The term "substantial evidence" "describes a quality of evidence … intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR 96-2p, 1996 SSR LEXIS 9 at *8. "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*

The ALJ's decision is supported by the opinions of the State Agency physicians, Drs. Joshua Schwartz and Murillo. As the ALJ noted, the physicians opined that Plaintiff "did not meet or equal a listed impairment." (*See* Doc. 10-3 at 30) Upon reviewing Plaintiff's medical record, Dr. Schwartz found Plaintiff had a long history of treatment, and increased symptoms following the death of her spouse. (Doc. 10-4 at 17) According to Dr. Schwartz, Plaintiff "endorsed many anxiety and depressive [symptoms]" but was "not significantly limit[ed]." (*Id.*) Thus, Dr. Schwartz opined Plaintiff could "do at least simple instructions, relate, and adapt." (*Id.*) In addition, he noted Plaintiff's affect was described between 2015 and 2016 as "constricted," "restricted," dysphoric," and "somewhat sad." (*Id.* at 17) Dr. Schwartz believed Plaintiff had "some affective impairment," and "limited public contact" was appropriate. (*Id.*) Similarly, Dr. Murillo reviewed Plaintiff's records in July 2018 and found Plaintiff had a longitudinal history of anxiety. (*Id.* at 30) Dr. Murillo opined Plaintiff had moderate limitations with public interactions, and should have "limited public contact." (*Id.* at 31)

Importantly, State Agency medical consultants are "highly qualified" physicians, who are also "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2); *see also Massimo v. Comm'r of Soc. Sec.,* 2019 U.S. Dist. LEXIS 140366 at *17 (E.D. Cal. Aug. 16, 2019) ("state agency consultants are experts in their respective fields, familiar with Social Security rules and regulations governing disability"), *aff'd by Massimo v. Saul*, 2020 U.S. App. LEXIS 19067 (9th Cir. Cal., June 17, 2020). "Findings of fact made by State agency medical and psychological consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources." SSR 96-6p, 1996 WL 374180, *1. Thus, the opinions of Drs. Schwartz and Murillo are entitled to weight as expert opinions.

The physicians' findings and opinions were not contradicted in any significant way by the medical record and treatment notes, which indicated Plaintiff had "intact cognitive functioning with normal thought process, intact memory and average intelligence." (*See* Doc. 10-3 at 30) (citations omitted) Therefore, the opinions of Drs. Schwartz and Murillo are substantial evidence in support of the ALJ's determination. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("the report of a nonexamining, nontreating physician need not be discounted when it is not contradicted by <u>all other evidence</u> in the record.") (emphasis in original); *see also Tonapetyan*, 242 F.3d 1149 (the opinions of non-examining physicians "may constitute substantial evidence" when consistent with other evidence in the record).

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ properly applied the five-step sequential process to Plaintiff's claim for benefits.  In addition, the ALJ identified specific, legitimate reasons for giving less weight to the opinion of Dr. Lopez.  Because the ALJ applied the proper legal standards, the determination that Plaintiff is not disabled must be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant, the Commissioner of Social Security, and against Plaintiff Tammy McKaughan.

IT IS SO ORDERED.

Dated:   **September 21, 2020**            **/s/ Jennifer L. Thurston**
                                                                   UNITED STATES MAGISTRATE JUDGE